```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                       SOUTHERN DIVISION


- - - - - - - - - - - - - - - x
                              :
UNITED STATES OF AMERICA      :
                              :   Criminal No. 15-514-PWG
     v.                       :
                              :
TARIK REVEL,                  :
                              :
          Defendant.          :
                              :
- - - - - - - - - - - - - - - x   November 1, 2018

                                  Greenbelt, Maryland
```

**DETENTION HEARING**

```
     BEFORE:   THE HONORABLE GINA L. SIMMS, Judge

APPEARANCES:            ELIZABETH G. WRIGHT, Esq.
                        Office of the United States Attorney
                        6406 Ivy Lane
                        Greenbelt, MD 20770
                          On Behalf of the Government

                        JULIE LB STELZIG, Esq.
                        Office of the Federal Public Defender
                        6411 Ivy Lane, Suite 710
                        Greenbelt, MD 20770
                          On Behalf of the Defendant

Also Present:           Sharnell Howell, Probation Officer

Audio Operator:         Maria Diaz

Transcription Company:  CompuScribe
                        P.O. Box 789
                        Cheltenham, Maryland 20623-9998
                        (301) 577-5882
```

Proceeding recorded by electronic sound recording, transcript produced by transcription service.

*CompuScribe*
*301/577-5882*

I N D E X

                                                                      Page

Preliminary Matters                                                      3

Comments by Probation Officer Sharnell Howell                            4

Comments by Julie LB Stelzig, Esq.
  On Behalf of the Defendant                                             7

Comments by Elizabeth G. Wright, Esq.
  On Behalf of the Government                                           10

Ruling by Judge Gina L. Simms                                           11

P R O C E E D I N G S

(Whereupon, at 11:47 a.m., the proceeding began.)

THE COURT: Court is now in session. Please be seated. Ms. Wright, please call the case.

MS. WRIGHT: Good morning. Thank you, Your Honor. We are here for a continuation of the initial appearance and detention hearing in the matter of the United States of America versus Tarik Revel. Criminal Number PWG15-0514. I am Elizabeth Wright on behalf of the United States, and with me at counsel table is Probation Officer Sharnell Howell.

THE COURT: Good morning. Good morning, Ms. Howell.

MS. STELZIG: Good morning, Your Honor. Julie Stelzig on behalf of Mr. Revel. And I wanted to acknowledge the presence of Kawanta Adams here in the courtroom on behalf of Mr. Revel.

THE COURT: Sure, good morning. So Mr. Revel was late, wasn't he?

MS. STELZIG: I do apologize. Yes, he was quite a bit late, Your Honor. So I do apologize for that.

THE COURT: No, I appreciate that but, of course, you know, this is a hearing to set conditions of release and so that doesn't make me feel really comfortable that he will follow orders about being at places at times when he is directed to be there.

So if you want to talk to him for a minute and make

1   sure that he understands -- the irony of it just doesn't

2   escape me.

3           MS. STELZIG:  Yes, Your Honor.  Mr. Revel certainly

4   does understand the importance of being in the court.  He was

5   given a ride today by his friend Mr. Adams and apparently they

6   made a wrong turn and they got a little lost coming here.

7   But again they do apologize, and he certainly appreciates the

8   importance, and we appreciate the optics aren't good given the

9   purpose of today's proceeding.

10          THE COURT:  Understood.  All right, so Ms. Howell,

11  looking back through my notes, sort of one of the things that

12  we had adjourned for was there was the notion that Ms. Stelzig

13  had identified this address that was his mom's house.  And

14  then there was also sort of a discussion about his mom's

15  health situation and whether or not somebody else would be

16  sort of a third-party custodian.

17          And I just wanted to get an update from you about

18  what information you received and how you feel about the

19  quality of the information you have received because I want to

20  make sure that it is something that you are comfortable with.

21          MS. HOWELL:  I understand, Your Honor.  I spoke with

22  Mr. Revel's mom on the 30th, and she stated that she is not

23  willing to have Mr. Revel reside in her home.

24          THE COURT:  I am sorry.  She is --

25          MS. HOWELL:  She is not willing to have him reside

1   in her home.

2           THE COURT:  Okay.

3           MS. HOWELL:  And that message was conveyed by her
4   and the aunt that also resides in the home, Ms. Brenda.  They
5   did not want him at the home at this time.

6           THE COURT:  So then the problem we had, as I recall,
7   is that -- well, one of the problems was that the address
8   where he had been residing before he was kind of staying at
9   the, his mom's house, had been addressed --

10          Well, I am sorry.  The Beltsville, Maryland, address
11  was an address that you hadn't been in contact with.  You just
12  hadn't been there for lack of a better phrase.

13          MS. HOWELL:  Yes.

14          THE COURT:  And so what is your understanding, and I
15  will hear from Ms. Stelzig in a second, but what is your
16  understanding with respect to the Beltsville, Maryland,
17  address?

18          MS. HOWELL:  That was his last address of contact.
19  And that was with Ms. Kawanta Adams.  And that is who is here
20  with him in the court this morning, Your Honor.  And she is
21  stating that she is willing to have Mr. Revel reside in her
22  home for the portion of the location monitoring until he has
23  his court date.

24          I also need to note that Ms. Adams was the
25  co-Defendant on the charges that were dismissed for the last

1   violation that we had before the Court.

2          THE COURT:  And that is -- because I of course have

3   your October 10th petition.  I am not sure, let me just make

4   sure I have the earlier one you were referring to a minute

5   ago.

6          MS. HOWELL:  I have a copy of it.

7          THE COURT:  July?  Is that from July?

8          MS. HOWELL:  It is April 26, Your Honor.  I have a

9   copy.  It is my copy I have written on but I can bring it to

10  you.

11         THE COURT:  Please.  I have this -- of course the

12  one that is dated October 1 and I have the other one that was

13  dated July 12.  And has Ms. Stelzig seen this or --

14         MS. STELZIG:  The last time around, Your Honor.  I

15  don't have copy with me today.  Yes, I have seen it.

16         THE COURT:  I didn't know if you brought it with

17  you.  Oh, I see what you are saying, Ms. Howell.

18         (Pause)

19         THE COURT:  All right.  So then your concern is

20  about the suitability of her serving as a third-party

21  custodian.

22         MS. HOWELL:  Yes, Your Honor.

23         THE COURT:  And for this particular petition though

24  you withdrew it, it sounds like.  Was there --

25         MS. HOWELL:  Yes, the charges were dismissed on both

1  parts.  For her and for Mr. Revel.

2          THE COURT:  All right.  Then the -- you had alluded

3  a minute ago to electronic monitoring.  So that is one of the

4  things that you would request if he is in fact released.  That

5  he be put --

6          MS. HOWELL:  Absolutely, Your Honor.

7          THE COURT:  Is there technological capability?  Does

8  that exist at the --

9          MS. HOWELL:  They do not have a home phone at the

10 residence but it can be done with a cell phone service.  It

11 just takes a little bit longer with more cost for the service.

12         THE COURT:  All right.  So then what ultimately I

13 guess, Ms. Howell, sort of what is your position then with

14 respect to Mr. Revel, and I will hear from Ms. Wright and

15 Ms. Stelzig.

16         Based on sort of all of this, what is your position

17 with respect to him?

18         MS. HOWELL:  Your Honor, I really am not sure, and I

19 would really defer to the Court.  Ms. Adams has been willing

20 and able to try to help Mr. Revel.  She is very close with

21 Mr. Revel's mother, who is also sick.  And Ms. Althea has

22 called Ms. Adams to ask if she would be the custodial for him.

23 She just did not want Mr. Revel in her home at this time.

24         So Your Honor had requested that we take a

25 urinalysis when we were in court the other day.

1           THE COURT:  Yes.

2           MS. HOWELL:  He tested positive for amphetamines on
3    that day.  However, he did go to the Family Health Center for
4    an assessment yesterday, and it tested negative.  And they
5    have set him up for group sessions and random urinalysis
6    beginning on Friday.

7           THE COURT:  You said group starts the 2nd?  Is that
8    what you mean?

9           MS. HOWELL:  Yes, Your Honor.

10          THE COURT:  All right.  And okay, so let me say
11   this.  I also have a notice from Judge Grimm that he is
12   directing counsel to call him on November 6, which is next
13   Tuesday, I believe.  November 6 at 9:30 a.m. in the morning.
14   And you, Ms. Wright, are directed to initiate the call.  And
15   then Ms. Howell, he also wants you available for that call.

16          He wants to talk about Mr. Revel including of course
17   when the actual violation of supervised release hearing will
18   occur.  So I thank you, Ms. Howell.  I have heard from you.
19   Let me hear from Ms. Stelzig and I will give Ms. Wright the
20   last word.

21          MS. STELZIG:  Thank you, Your Honor.  So it is
22   correct that Mr. Revel's mother, she is in the hospital.  She
23   is expected to be there for another few weeks.  She had to
24   have emergency surgery.  So she is not there, and I think it
25   is a combination of her health situation and also I think

1  Ms. Smith doesn't approve of the woman that Mr. Revel had been
2  seeing. I think it was a combination of factors.
3         But she does remain supportive of her son. It is
4  just that she wasn't willing to take that on at this time.
5  Ms. Adams, I just want to provide a little context. So that
6  incident report that Your Honor has from April, Mr. Revel and
7  Ms. Adams were dating. And they encountered at a gas station
8  the woman who filed the charges claiming to be a victim.
9  That is the same woman who was here in court earlier this
10 week.
11         And I guess she was ultimately found not to be
12 credible. Mr. Revel -- when that incident happened, Mr. Revel
13 and Ms. Adams immediately reported it to Officer Howell,
14 allowed her to document their injuries that they had suffered
15 because they were actually the victims in that, not the
16 aggressors. So I think -- you don't have to look very hard to
17 figure out what was happening in April.
18         And I appreciate that there might be concerns about
19 the stability of his personal relationships but I have
20 certainly spoken with Ms. Adams before. She is here in court
21 today. She called me and left me a message indicating that
22 she is willing to have him back in her home.
23         And my main concern, Your Honor, is that because he
24 has pending state charges, and I have been in communication
25 with his state public defender. He has got a court date of

1   December 5.  Mr. Revel can't admit to pending charges

2   obviously.  So we are either going to be -- have this

3   chicken-and-egg problem, and if he is not able to appear for

4   court then he is going to have a warrant.

5            And then he is potentially going to be serving a

6   sentence with an outstanding warrant, and it creates this

7   whole ripple effect.  And given that we have a fairly close in

8   time court date, December 5, what I would propose is that

9   Mr. Revel be allowed to go with Ms. Adams, and she is here to

10  answer any questions the Court might have.

11           And that he be on 24/7 lockdown.  And the only

12  things he is allowed to leave his house for, unless Ms. Howell

13  approves otherwise, is that he can go to court, to meet with

14  his attorneys and go to treatment.  That is it until he has

15  his court date on the 5th.

16           And then what we would ask -- I would be both

17  communicating with the state public defender, telling her, you

18  can't continue this court date.  We really need to get this

19  done, and then also tomorrow when we speak with Judge Grimm,

20  asking for a very rapid hearing date so that this time period

21  that we are talking about is as short as possible.

22           I know the Government has some understandable

23  concerns but I do think that would be the most efficient way

24  to proceed, and it also allows Mr. Revel to continue his

25  treatment.

1                Now with respect to the positive amphetamine
2    testing, I understand that Mr. Revel is going to be trying to
3    track down -- he had some pain medicine from a dentist visit.
4    I am going to try to help him on that regard but I
5    think -- again my main focus is making sure that he is able to
6    attend to his state proceeding just coming up on December 5th,
7    and we do think that Ms. Adams is a suitable, responsible
8    custodian for that period of time.
9                THE COURT:  Okay.  Thank you, Ms. Stelzig.
10   Ms. Wright, is there anything else that you want to make me
11   aware of before I make my ruling?
12               MR. WRIGHT:  There are no other specific facts, Your
13   Honor.  I would just note for the record that we do -- this is
14   a case where the burden is on the Defendant to show by clear
15   and convincing evidence, as this Court knows, that he will not
16   pose a danger or any risk of flight, and we are, I guess -- I
17   think the Court's word was most appropriate here -- just sort
18   of uncomfortable with that, and since it is his burden, we are
19   still uncomfortable.
20               And that counsel is toward detention because there
21   have just been this series of continuing events that do not
22   inspire any confidence.  I think the most serious concern is
23   not actually really an appropriate consideration on whether to
24   detain him or not, which is the desire that we all have for
25   him to be able to resolve the state court proceedings.

1           Certainly we want that to be able to happen, and I
2  understand given the practicalities of writs and things,
3  having him on lockdown may be the only way to enable that to
4  happen.
5           So I would just -- we are still uncomfortable.  We
6  think it is very questionable whether Mr. Revel has met his
7  burden, and he knew coming in, for each of these appearances,
8  that he needed to show and make the Court comfortable that he
9  was in compliance and able to continue to be that, and we
10 don't think that has happened.
11          We understand that it is a very difficult decision
12 because we also obviously want to be able proceed along
13 efficiently.  So we would defer to the Court's discretion, of
14 course, on that but just note the continuing concerns, which
15 is an issue given that it was his burden to show by clear and
16 convincing evidence that there was no ongoing concern, and he
17 had two.
18          The home situation sort of falling through with his
19 mother and whatnot.  That has been sort of a moving target
20 where he is going to end up.
21          THE COURT:  I understand.  Thank you, Ms. Wright.
22 All right, so Mr. Revel, of course appearing in front of me on
23 October 29 for an initial appearance on the violation -- in
24 connection with the violation of supervised release petition
25 or specifically two different violation reports that

Ms. Howell had lodged.

October 10, 2018, being the most recent one that had set forth five different allegations of violations. The burden is, as Ms. Wright has said, on the Defendant to establish by clear and convincing evidence that, you know, there is a condition or a combination of conditions that I can fashion that can reasonably assure that he won't flee and that he won't pose a danger to the community.

I have to say that it gives me pause because I am troubled, as I said, by the lack of communication that Mr. Revel has had with Ms. Howell. That is the allegation. That is obviously one of the many obligations, and that is the subject for the hearing that Judge Grimm will conduct in front of him in a date as yet to be determined.

But I do think that I can fashion a condition or a combination of conditions to ensure that he won't be a risk of flight or a danger to the community.

I think that the Defendant has sort of barely met his burden but I am also comforted by the fact that next Tuesday you all will be on the phone with Judge Grimm, and so I am going to impose very stringent conditions, and you need to understand, Mr. Revel, you know, you have between now and next Tuesday, because November 6 at 9:30 a.m. in the morning, you better believe Ms. Howell will make Ms. Wright or Judge Grimm aware of any way, shape or form in which you

1   violate these conditions that I am now imposing.

2          So you are on a very short rope, although I hate
3   that phrase.  I am not giving you a lot of leeway here because
4   I don't think that you quite get that you could have a faced a
5   more significant sanction in that your liberty could have been
6   restricted today.

7          THE DEFENDANT:  Okay.

8          THE COURT:  So I am going to impose the following
9   conditions: Number one and most importantly, you are to obey
10  each and every and all directives that your probation officer,
11  Ms. Howell, imposes.  Certainly it is always subject to
12  reasonableness but at this point I am sort of presuming that
13  everything she asks you to do frankly is reasonable.

14         So you are to abide by each and every command,
15  instruction, directive, whatever you want to call it that
16  Ms. Howell gives you, number one.

17         You are obviously to refrain from committing any
18  violation of state, local or federal offense of any kind.  You
19  are to participate in an in-patient or outpatient treatment
20  program, whatever it is that Ms. Howell says you are to do.

21         My understanding is that you have a date for
22  tomorrow to commence a treatment program.  Again I am not
23  passing on the veracity of the violations but you are alleged
24  to have failed to have re-enrolled in a substance abuse
25  program before.  You are not an idiot.  You understand that if

1   you fail to participate in whatever program is being offered

2   to you, Judge Grimm certainly will not take that kindly.

3              THE DEFENDANT:  Okay.

4              THE COURT:  You are to submit to any drug testing.

5   It doesn't matter to this Court whether or not you are testing

6   in your outpatient program and Ms. Howell asks you for six

7   samples a day.  It is given this particular record -- as I

8   said, you are to listen to any and all directives, reasonable

9   directives that she makes.

10             And she is the eyes and ears of this Court, as I

11  said.  So whatever frequency of drug testing she requires, you

12  are required to do that.

13             You are to reside at the address in Beltsville,

14  Maryland, that you will give to Ms. Howell, where you will be

15  confined to that address on 24/7 lockdown with the following

16  exceptions.  You of course are to attend all court hearings.

17  You are certainly always welcome and should be meeting with

18  Ms. Stelzig or your state attorney or any representative from

19  the Office of the Federal Public Defender.

20             Certainly if Ms. Howell needs to meet with you, you

21  need to meet with her but it is basically your attorney, your

22  probation officer and any court appearances.  In addition to

23  obviously the drug treatment program.

24             Those are pretty much the things that you are going

25  to be allowed to do.  Do you understand?

1            THE DEFENDANT:  Yes, Your Honor.

2            THE COURT:  You -- let's see.  I noticed here
3   Ms. Howell -- I am going to reiterate that you are not to
4   possess any firearm or dangerous device of any kind.  Not
5   limited to just a firearm but to a knife or any other kind of
6   weapon, if you will.

7            And you certainly are to refrain from the possession
8   or use of any illicit substances.  If you have a prescription
9   from a health care professional, whether it is a dentist or a
10  physician, you are certainly allowed to take that but you have
11  to provide proof of your ability to take those medications to
12  Ms. Howell.

13           In sum and substance, Mr. Revel, you need to be in
14  touch with Ms. Howell as often as she says and you are not to
15  leave this house unless she expressly gives you permission to
16  do so.  Are there any questions?

17           THE DEFENDANT:  No.

18           THE COURT:  Is there anything else I have forgotten,
19  Ms. Howell?  The electronic monitoring we are obviously going
20  to do.

21           MS. HOWELL:  Okay.

22           THE COURT:  That is going to be done --

23           MS. HOWELL:  I just need it in the order.

24           THE COURT:  We are doing all the boxes.  We are
25  going to do this again.  Yes, the electronic monitoring, yes,

1   I did not need to gloss over that.  You are going be 24/7 and
2   you are going to be on electronic monitoring.
3              And so Ms. Adams is going to have to do whatever she
4   needs to do.  She is going to need to do whatever need to be
5   done to make sure that the cell phone can accommodate the
6   device, all right?
7              MS. HOWELL:  Thank you, Your Honor.
8              (Pause)
9              THE COURT:  All right.  And as I said, counsel,
10  November 6 at 9:30 a.m.  Ms. Wright, you are to initiate the
11  call, and Ms. Howell, you should also be available for the
12  status call.
13             (Pause)
14             THE COURT:  Ms. Adams, you can stay standing because
15  I want you to come into the well of the Court.  All right so
16  Ms. Adams, if you could spell your first name for me?
17             MS. ADAMS:  K-a-w-a-n-t-a.
18             THE COURT:  All right, Ms. Adams.  You have agreed
19  to be the third-party custodian for Mr. Revel.  What that
20  means is that in addition to Ms. Howell, you are the eyes and
21  ears of this Court.  And what that means is that at this
22  point, at this juncture, I am trusting that you will cooperate
23  with Ms. Howell, and if Mr. Revel does anything to violate the
24  Court's orders, you have an obligation, if you will, to make
25  the Court via Ms. Howell aware of that.

1          My understanding is that previously, whatever this

2   incident was, you had absolutely no problem in making

3   Ms. Howell aware of the facts surrounding that so I will

4   assume that in this case you have no problem in keeping her

5   informed about what is going on at your residence.

6          You have to understand that it means that if

7   Ms. Howell decides that she wants to drop by at any point in

8   time, she is allowed to do that, and you are never allowed to

9   refuse her entry.  Do you understand that?

10         MS. ADAMS:  Yes, ma'am.

11         THE COURT:  Do you agree to serve as third-party

12  custodian for Mr. Revel?

13         MS. ADAMS:  Yes, I do.

14         THE COURT:  Thank you.  Thank you for doing that.

15  All right, anything further, Ms. Howell?  Ms. Wright?

16         MS. HOWELL:  No, Your Honor.

17         MS. WRIGHT:  No thank you, Your Honor.

18         THE COURT:  Anything further, Ms. Stelzig?

19         MS. STELZIG:  Nothing, Your Honor.

20         THE COURT:  All right, Mr. Revel.  We stand

21  adjourned.

22       (Whereupon, at 12:13 p.m., the hearing concluded.)

23

24

25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the duplicated electronic sound recording of the proceedings in the above-entitled matter.

*Laura C. Jackson*      7/22/2019
Laura C. Jackson         Date
Transcriber